UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:11-CR-182-SDJ |
| | § | |
| KENNETH JOE HARRELSON (3) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kenneth Joe Harrelson's Motion for Compassionate Release under 3582(C)(1)(A), (Dkt. #301). The Government filed a response in opposition, (Dkt. #306)[1], and Harrelson filed a reply, (Dkt. #308). Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** the motion.

### I. BACKGROUND

Harrelson is currently serving a 168-month term of imprisonment at USP Victorville for conspiracy to possess with intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. His anticipated release date is December 1, 2023. Citing prison conditions, his medical conditions and vulnerability to COVID-19 complications, his asserted rehabilitation and low risk of recidivism, and his alleged need to care for his elderly father, his disabled brother, his fiancée, and relying on 18 U.S.C. § 3582(c)(1)(A), Harrelson requests that the

---

[1] The Government also filed a Motion to Seal, (Dkt. #305), Exhibit B to its response, as such exhibit contains Harrelson's medical records. Such Motion to Seal will be **GRANTED**.

1

Court reduce his sentence to time served and order him released from prison. (Dkt. #301 at 2–4, 7, 9).

Before Harrelson filed the instant motion, he claims he submitted a letter to his warden on September 14, 2021, requesting release because of the risk created by the COVID-19 pandemic due to his unvaccinated status and his medical conditions, as well as his need to care for his fiancée and post-sentencing rehabilitation. (Dkt. #301 at 3); (Dkt. #308-1). Additionally, Harrelson attached to his motion two letters from his alleged fiancée that address her liver condition and the fact that she intends to marry him upon his release. (Dkt. #301-2). In its response, the Government states that the "BOP has no record of receiving a request for compassionate release from the defendant nor [his fiancée]." (Dkt. #306 at 2). The Government further notes that it reached out to the BOP to confirm that Harrelson had not exhausted his administrative remedies, but as of the date of its response, the Government had not heard back. (Dkt. #306 at 2).

Harrelson filed a compassionate-release motion in this Court, seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) on November 12, 2021.

## II. Discussion

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).

One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which

can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the

Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[2] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

## B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is

---

[2] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

5

not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g., United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both

6

motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the

Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should

8

be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Harrelson has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

## C. Harrelson's Motion

### i. Exhaustion

As an initial matter, the Court may consider Harrelson's compassionate-release motion only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under

9

Section 3582(c)(1)(A)(i) unless a motion for such modification is made by the Director of the BOP or by a defendant who has fully exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Harrelson states that he requested compassionate release from the warden at his facility and attached the relevant letter to his reply. (Dkt. #301 at 3); (Dkt. #308-1). However, the Government states that the BOP has no record of receiving such request. (Dkt. #306 at 2). The letter Harrelson attached to his reply shows no indication of whether it was sent to the BOP, has a handwritten date of September 14, 2021, and merely is addressed to "Warden." (Dkt. #308-1); *see also* 28 C.F.R. § 571.61(a) (providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his facility); 18 U.S.C. § 3582(c)(1)(A) (stating that a defendant may file a compassionate-release motion after "the lapse of 30 days from the receipt of [a compassionate-release] request by the warden of the defendant's facility").

However, even assuming that such request was made to the warden of his facility, the only grounds raised for compassionate release in his letter were COVID-19 related risks caused by his refusal to get the vaccine, his need to be a caretaker for his fiancée after her liver transplant, his rehabilitation, and his back, neck, and shoulder pain and acid reflux. As this Court has previously stated, "to exhaust [his] administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in [his] motion." *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (emphasis added). Therefore, the Court will not consider the additional reasons raised in his

10

motion that were not raised in his request, including Harrelson's need to care for his elderly father and disabled brother or his low risk of recidivism.

### ii. "Extraordinary and compelling reasons" warranting release

Assuming Harrelson has satisfied the threshold exhaustion requirement as to his remaining arguments, his motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Harrelson first argues that his refusal to get the COVID-19 vaccine due to religious reasons places him at a higher risk of complications should he become infected with COVID-19, and therefore this constitutes an extraordinary and compelling reason warranting his release. Harrelson then argues that his shoulder and back pain and severe acid reflux also justify his release, as does his rehabilitation. Finally, Harrelson contends that he needs to care for his fiancée who needs to undergo a liver transplant. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Harrelson's concerns do not fall within the categories of "extraordinary and compelling reasons" identified by the Sentencing Commission. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

> (ii) The defendant is—
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Additionally, 1B1.13's application note 1 provides the following two family circumstances that could warrant a sentence reduction:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G § 1B1.13 cmt. n.1(C).

Turning to Harrelson's arguments, Harrelson first argues that because he is not vaccinated, he is at a higher risk for COVID-19 complications. While that may be true, the decision to not receive the COVID-19 vaccine falls solely upon him, as the BOP has been working to protect the inmate population by making the vaccine available to all staff and inmates. *See* (Dkt. #306 at 6). Harrelson's refusal to receive the COVID-19 vaccine, thereby declining the extra protection it provides, is not a compelling nor extraordinary circumstance that would justify his release. *See United States v. Baeza-Vargas*, 532 F.Supp.3d 840, 843–844 (D. Ariz. 2021) (stating that "[j]udges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances" and collecting cases). And, as

12

the Fifth Circuit has stated, "[f]ear of COVID doesn't automatically entitle a prisoner to release." *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021), cert. denied, 141 S. Ct. 2688, 210 L. Ed. 2d 843 (2021). Additionally, Harrelson does not explain how the other medical conditions he suffers from—shoulder and back pain and severe acid reflux—fall within the medical conditions in Section 1B1.13's application note 1, or how his conditions in any way, much less substantially, diminish his ability to provide self-care. Indeed, he currently manages all of his medical conditions with medication. And as the Government notes in its response, Harrelson is currently classified as "Care Level 2 'Stable, Chronic Care.'" (Dkt. #306 at 3 (emphasis omitted)). Therefore, Harrelson's concern about the risks of contracting COVID-19 in the future and his concerns about his other medical conditions do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Similarly, Harrelson's argument that he needs to care for his fiancée who may have a liver transplant at some point in the future is also unlike the family-based circumstances identified by the Sentencing Commission. First, Section 1B1.13's application note 1 limits "extraordinary and compelling reasons" to the incapacitation of the defendant's spouse or registered partner, and Harrelson does not appear to contend that his fiancée would fall into either of these categories. Second, application note 1 discusses *present* incapacitation, not incapacitation at some future undetermined time. And finally, application note 1 describes a circumstance where the spouse or registered partner has no one else to be his or her caregiver. Harrelson

13

has not shown that his fiancée is presently incapacitated or that he is her only available caregiver.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Harrelson's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal to his motion. But, as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitutes "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Harrelson's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Harrelson asserts as a basis for his release are unlike any of the reasons enumerated by the Sentencing Commissions in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration. By contrast, Harrelson argues that he should be released because his refusal to get the vaccine coupled with

14

his incarceration increases his risk of contracting COVID-19 in the future, and he needs to care for his fiancée who may have surgery in the future.

The Court does not downplay Harrelson's or his fiancée's health issues or suggest that his concerns about COVID-19 are unreasonable. But Harrelson's motion does not identify any specific, significant hardship that he presently faces; rather, the motion raises only the concern that Harrelson is at risk for developing a significant hardship in the future *if* he contracts COVID-19 and that his fiancée may need a caregiver if she has a liver transplant in the future. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration or potential future incapacitation of a romantic partner is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Additionally, Harrelson argues that his rehabilitation while incarcerated constitutes an extraordinary and compelling reason warranting his release. Although Harrelson's accomplishments, such as earning his GED, while incarcerated are commendable, they do not constitute an extraordinary and compelling reason for a sentence reduction, especially given that Harrelson's record with the BOP indicates that he has been disciplined eight times while in BOP custody. The Court may consider post-sentencing rehabilitation efforts in ruling on a compassionate-release motion, but "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the

15

Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *United States v. Dotrey*, No. 2:13-CR-04, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying motion for compassionate release where defendant argued that he had been rehabilitated and was rated by the BOP as an individual with a low risk of recidivism). Without more, and especially given his disciplinary record, Harrelson's alleged rehabilitation does not constitute an extraordinary and compelling reason within the meaning of Section 3582(c)(1)(A)(i).

For the foregoing reasons, neither Harrelson's COVID-19-related concerns, his medical conditions, his fiancée's medical condition, nor his alleged rehabilitation constitute extraordinary and compelling reasons within the meaning of Section 3582(c)(1)(A)(i). Because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, the Court must deny Harrelson's motion.

### iii. Section 3553(a) factors

Even if Harrelson could establish that "extraordinary and compelling reasons" warrant his release, his motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against reducing his sentence. Harrelson has failed to show how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors—notably Harrelson's history, the need to promote respect for the law, the need to provide just punishment

for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

While the Court commends Harrelson for completing several vocational and educational programs while incarcerated, he continues to present a danger to the community based on the totality of the circumstances. Harrelson pleaded guilty to participating in a drug-trafficking conspiracy involving methamphetamine. (Dkt. #306 at 17). And this was not Harrelson's first offense. To the contrary, he has a substantial criminal history that includes possession of a controlled substance in a drug free zone, theft by check, fleeing a police officer, possession of marijuana, driving with a suspended license, resisting arrest, unlawfully carrying a weapon, possession of marijuana in a drug free zone, and evading arrest. (Dkt. #306 at 17). And he has been disciplined eight times while in BOP custody. Harrelson fails to show how his release would reflect the seriousness of his offense, promote respect for the law, and provide just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Harrelson's motion is therefore also denied on this basis.[3]

---

[3] To the extent Harrelson requests, in the alternative, that the Court order him released to home confinement, such request must also be denied. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Groover*, 844 F.App'x 185, 188 (11th Cir. 2021) (per curiam) ("Neither § 3624(c)(2) nor the CARES Act . . . give the judiciary any authority to grant an inmate's request for home confinement."); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the

### III. Conclusion

For the foregoing reasons, Defendant Kenneth Joe Harrelson's Motion for Compassionate Release under 3582(C)(1)(A), (Dkt. #301), is **DENIED**. Further, the Government's Motion to Seal, (Dkt. #305), is **GRANTED**.

**So ORDERED and SIGNED this 21st day of July, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement." (citing *Moore v. U.S. Att'y. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam))).